UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
GERARD JENKINS,  :
               Plaintiff,  :
                                                           :
v.  :         **OPINION AND ORDER**
                                                           :
CORRECTION OFFICER J. CORDERO,  :
CORRECTION OFFICER MAYFIELD,  :        17 CV 1592 (VB)
HEARING OFFICER: ASSISTANT DEPUTY  :
SUPERINTENDENT OF PROGRAMS J.  :
WOOD,  :
               Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Gerard Jenkins, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983 alleging (i) correction officers Cordero and Mayfield violated his Eighth Amendment rights when they used excessive force against plaintiff while he was incarcerated at Sing Sing Correctional Facility ("Sing Sing"), and (ii) defendant Deputy Superintendent of Programs Wood violated plaintiff's Fourteenth Amendment right to due process by improperly disciplining him on allegedly false charges.

      Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #16).

      For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

      For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the complaint as true, and draws all reasonable inferences in plaintiff's favor, as summarized below.

1

On August 31, 2015, plaintiff's wife visited him at Sing Sing. After the visit ended, as plaintiff walked towards the inmate frisk area, Cordero allegedly attacked plaintiff from behind. Cordero then dragged plaintiff to the frisk area, where defendant Mayfield, responding to the disturbance, allegedly also assaulted plaintiff.

Cordero filed a misbehavior report against plaintiff, charging him with (i) assaulting staff, (ii) creating a disturbance, (iii) violent conduct, (iv) making threats, (v) ignoring a direct order, and (vi) violating visiting procedures.

Defendant Wood oversaw plaintiff's disciplinary hearing. On October 1, 2015, Wood found plaintiff guilty of three of the six charges. He imposed discipline consisting of (i) sixty days in the special housing unit ("SHU"), in addition to the thirty-one days plaintiff spent there prehearing, (ii) loss of phone privileges while in the SHU, and (iii) loss of sixty days of good time credit.

Plaintiff alleges that while confined in the SHU on September 2, 2015, he submitted a grievance related to the assault. When he did not receive a response, on October 5, 2015, plaintiff submitted a second grievance. He claims he placed both grievances "in the black box in the SHU," after which he "no longer had control over those grievances." (Compl. Ex. B).

On November 10, 2015, plaintiff was released from the SHU earlier than anticipated, having spent at total of seventy-two days there.

The same day, plaintiff asked the prison grievance representative about the lack of response to his grievances.[1] Although the grievance representative initially said he recalled

---

[1] Exhibit B to plaintiff's complaint contains ambiguous statements regarding whether plaintiff discussed one or both grievances with the grievance coordinator. For the purposes of this motion, consistent with the Court's obligation to draw all inferences in plaintiff's favor, the Court will assume both grievances were discussed.

filing the grievances on plaintiff's behalf and would provide plaintiff with the file number, the next day he informed plaintiff the grievances had not been filed.

On November 24, 2015, plaintiff spoke with the grievance supervisor, who told plaintiff the grievances had not been received, and at that point it was too late to file them. The same day, plaintiff filed another grievance, complaining about the "procedures for collecting or picking up mail addressed to grievance" (Compl. Ex. B), and requesting that he be allowed to resubmit his unfiled grievances.

Plaintiff appealed the results of his disciplinary hearing. On February 13, 2017, the director of inmate disciplinary programs reversed Wood's disciplinary determinations. (See Compl. Ex. C).

## DISCUSSION

I.      Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II. Failure to Exhaust

Defendants argue plaintiff's excessive force claim against Cordero and Mayfield must be dismissed because plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA").

The Court disagrees.

The PLRA provides, "[n]o Action shall be brought with respect to prisons under . . . Federal law[ ] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For a New York state prisoner to exhaust a claim, he must comply with the rules of New York's Inmate Grievance Program ("IGP"). The inmate generally must complete three steps: (i) submit a complaint to the clerk of the facility's Inmate Grievance Resolution Committee

("IGRC") within twenty-one days of the alleged incident, (ii) appeal an adverse decision to the superintendent of the facility within seven days of receipt of the IGRC's written response, and (iii) finally, appeal an unfavorable decision by the superintendent to the Central Office Review Committee within seven days of receipt of the superintendent's written response. 7 N.Y.C.R.R. § 701.5. An aggrieved inmate may appeal to the next level if he has not received a response within the prescribed time frame for each step of the grievance procedure. Id. § 701.6(g)(2).

However, only those remedies that are "available" to the prisoner must be exhausted. Ross v. Blake, 136 S. Ct. 1850, 1856 (2016)).

Here, plaintiff alleges he submitted two grievances while he was in the SHU, but for reasons outside of his control, they were never filed. These allegations are accepted as true for the purposes of this motion to dismiss.

The Second Circuit has held that the IGP's regulations are not clear regarding how a prisoner is to proceed when a grievance is submitted by the inmate but never filed with the IGRC. Williams v. Correction Officer Priatno, 829 F.3d 118, 126 (2d Cir. 2016). In particular, it found the "regulations only contemplate appeals of grievances that were actually filed," and "give no guidance whatsoever to an inmate whose grievance was never filed." Id. at 124. The court thus concluded the regulations on this point are "'so opaque' and 'so confusing that . . . no reasonable prisoner can use [them].'" Id. (quoting Ross v. Blake, 136 S. Ct. at 1859).

Defendants attempt to distinguish this case from Williams by pointing to inconsistent statements made by plaintiff regarding how he allegedly submitted his grievances. In particular, one of the documents attached to plaintiff's complaint states plaintiff put his grievances into "the black box in SHU" (Compl. Ex. B), whereas his opposition to the motion to dismiss states he "handed it to a[n] officer in SH-U . . . so it could be placed in the institutional mailbox." (Opp.

5

Br. at 4). The Court concludes it is immaterial which method plaintiff used to attempt to file his grievances. Either way, plaintiff has alleged the prison grievance representative specifically told him he recalled plaintiff having submitted grievances but his grievances were never filed. (See Compl. at 4, Ex. B). The Williams reasoning thus applies.

Defendants also argue this case differs from Williams because the inmate there was transferred to a different facility during the grievance process, which is not a factor here. However, the Williams court did not hinge its decision regarding unfiled grievances on the fact that the inmate had been transferred; rather, it found the regulatory scheme for appealing an unfiled grievance was prohibitively confusing on its own.

Accordingly, dismissal for failure to exhaust administrative remedies is unwarranted.

III. Due Process Claim

Defendants argue plaintiff has failed plausibly to allege a Fourteenth Amendment due process claim against defendant Wood.

The Court agrees.

To state a due process claim, plaintiff must plausibly allege "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001). Prisoners subject to disciplinary proceedings have a liberty interest only when "an institution's disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Luna v. Pico, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

There are several problems with plaintiff's complaint in this regard.

First, plaintiff's allegations against Wood are purely conclusory. He alleges Wood "arbitrarily and capriciously presid[ed] over plaintiff's [hearing] in a bias[ed] and not impartial manner," but pleads no facts to support that legal conclusion. (Compl. at 5; see also Opp'n at 5). This is insufficient as a matter of law. See Ashcroft v. Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Second, plaintiff has failed plausibly to allege he suffered an atypical and significant hardship. No bright-line rule exists to determine at what point a prisoner's confinement in SHU rises to this level. Wilkinson v. Austin, 545 U.S. 209, 223-24, (2005). Courts consider both the duration and conditions of confinement in determining whether an inmate has suffered atypical and significant hardship pursuant to a disciplinary proceeding. See Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (relevant factors in determining whether inmate endured atypical hardship include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement") (internal quotation marks and citation omitted).

Here, although plaintiff was sentenced to ninety days in SHU, the relevant factor for "determining whether any liberty interest was infringed" is "the actual duration of confinement," Palmer v. Richards, 364 F.3d at 66, n.4, which was seventy-two days.

The Second Circuit has concluded that a 101-day confinement in SHU, with conditions only incrementally more severe than general population conditions, did not meet the "Sandin standard of atypicality." Sealey v. Giltner, 197 F.3d 578, 589 (2d Cir. 1999) (citing Sandin v. Conner, 515 U.S. at 484). For "shorter confinements under normal SHU conditions" to implicate a prisoner's liberty interest, the inmate's conditions must have been "more severe than the

7

normal SHU conditions" or "a more fully developed record [must] show[] that even relatively brief confinements under normal SHU conditions were, in fact, atypical." Palmer v. Richards, 364 F.3d at 65.

Plaintiff here has not alleged the conditions of his confinement in the SHU were more severe than normal or that brief SHU confinements were atypical.

Finally, although the loss of good time credit can implicate a liberty interest, Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974), here plaintiff's hearing was administratively reversed, which would have restored his good time credit. As such, plaintiff can no longer anchor his due process claim to the loss of that time. See Cespedes v. Coughlin, 956 F. Supp. 454, 472-75 (S.D.N.Y. 1997) (collecting cases).

Accordingly, plaintiff's due process claim is dismissed.

## CONCLUSION

The motion to dismiss is DENIED as to the Eighth Amendment excessive force claim against defendants Cordero and Mayfield, and GRANTED as to the Fourteenth Amendment due process claim against Wood.

By January 31, 2018, defendants Cordero and Mayfield shall file their answer to the complaint. By separate order, the Court will schedule an initial conference.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk is directed to (i) terminate defendant J. Wood, (ii) terminate the motion (Doc. #16), and (iii) mail a copy of this Opinion and Order to plaintiff.

Dated: January 17, 2018
      White Plains, NY

SO ORDERED:

/s/ Vincent L. Briccetti
Vincent L. Briccetti
United States District Judge